**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-00253-NYW-KAS

LUMEN TECHNOLOGIES SERVICE GROUP, LLC f/k/a CENTURYTEL SERVICE GROUP, LLC,

      Plaintiff,

v.

CEC GROUP, LLC f/k/a COMMUNICATIONS ENGINEERING CONSULTANT, LLC,

      Defendant/Third-Party Plaintiff,

v.

PAUL J. FORD & COMPANY,

      Third-Party Defendant.

---

## ORDER ON MOTION TO DISMISS

---

This matter is before the Court on Third-Party Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion" or "Motion to Dismiss") [Doc. 23]. The Court has reviewed the Motion and the related briefing, the applicable case law, and the entire case file, and concludes oral argument would not materially assist in the resolution of this matter. For the reasons set forth below, the Motion to Dismiss is respectfully **GRANTED**.

### BACKGROUND

Plaintiff Lumen Technologies Service Group, LLC ("Lumen") entered into a contract with Defendant CEC Group, LLC ("CEC"), under which CEC was to evaluate the structural capacity of a building, located in Florida, that Lumen intended to purchase. [Doc. 8 at ¶¶ 1–2, 16]. Lumen alleges that CEC negligently performed the structural evaluation and incorrectly concluded that

the building had the structural capacity to handle Lumen's intended uses for the building.  [*Id.* at ¶¶ 3, 21–23].  After Lumen purchased the building and began renovations, the building's second-floor concrete slab partially collapsed.  [*Id.* at ¶¶ 4–5, 26].  Further analysis revealed that the building did not have sufficient structural capacity to support Lumen's intended use of the building.  [*Id.* at ¶ 28].

Lumen sued CEC in federal court on January 27, 2023, [Doc. 1], and filed an Amended Complaint on February 14, 2023.  [Doc. 8].  Lumen asserts claims for breach of contract, breach of warranty, and breach of express indemnity against CEC.  [*Id.* at ¶¶ 30–47].  CEC answered and filed a Third-Party Complaint against Third-Party Defendant Paul J. Ford & Company ("PJF"), alleging that CEC contracted with PJF to provide the structural engineering services referenced in Lumen's Amended Complaint and that "[i]n the event Lumen's allegations regarding structural engineering services are true, which CEC denies, PJF is responsible therefor."  [Doc. 14 at ¶¶ 1–2]; *see also* [Doc. 8 at ¶ 19 (Lumen alleging that "CEC, which does not perform structural engineering services, retained [PJF] as a subcontractor to perform the structural analysis.")].  CEC asserts three third-party claims against PJF: breach of contract; negligence; and a claim for indemnity.  [Doc. 14 at ¶¶ 3–19].  The Clerk of the Court issued a Summons on a Third-Party Complaint to Paul J. Ford & Co., c/o Registered Agent, 36 S. 18th Avenue, Suite D, Brighton, Colorado 80601.  [Doc. 15].  Although there is no return of service filed on the docket, PJF admits that its registered agent was served on March 7, 2023.  [Doc. 19 at ¶ 1].

On April 5, 2023, PJF filed its Motion to Dismiss, arguing that CEC's claims should be dismissed because this Court lacks personal jurisdiction over PJF.  [Doc. 23 at 2].  In support, PJF notes that it is an Ohio corporation with a principal place of business in Ohio; that it has no offices, property, bank accounts, or investments in Colorado; and that the building at the center of this

lawsuit is located in Florida.  [*Id.* at ¶¶ 1–3].  It follows, according to PJF, that this Court has neither general personal jurisdiction nor specific personal jurisdiction over PJF.  [*Id.* at 4–8].  CEC responds that the Court has personal jurisdiction over PJF because PJF has consented to be sued in the state of Colorado, [Doc. 33 at 1], and in its Reply, PJF disputes that it has consented to the personal jurisdiction of Colorado courts.  *See generally* [Doc. 45].  On July 20, 2023, the Honorable Kristen L. Mix granted PJF's Motion to Stay Discovery and stayed all discovery in this case with respect to PJF.  [Doc. 58].[1]  The Court addresses the arguments in the Motion to Dismiss and related briefing below.

## LEGAL STANDARDS

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge a court's exercise of personal jurisdiction over it.  Fed. R. Civ. P. 12(b)(2).  The plaintiff bears the burden of demonstrating that a court has personal jurisdiction over the defendant.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008).  When the court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."  *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999)).  "[T]o exercise jurisdiction in

---

[1] On August 8, 2023, this case was reassigned to the Honorable Kathryn A. Starnella upon her appointment to the bench.  *See* [Doc. 61].

harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  In Colorado, only one inquiry is necessary, as the Colorado long-arm statute "confer[s] the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions," and its requirements are necessarily addressed under a due process analysis. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005); *see also* Colo. Rev. Stat. § 13-1-124(1).

A court may exercise general personal jurisdiction (or "all-purpose" jurisdiction) or specific personal jurisdiction (or "conduct-linked" jurisdiction) over a defendant.  *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017); *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).  Specific jurisdiction is available where the lawsuit arises out of or relates to the defendant's contacts with the forum state. *Bristol-Myers Squibb*, 582 U.S. at 262.  In other words, "specific jurisdiction is proper if there is 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221 (10th Cir. 2021) (quoting *Bristol-Myers Squibb*, 582 U.S. at 262).   On the other hand, general jurisdiction "permits a court to adjudicate any cause of action against" the defendant, "wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).   Typically, a forum state may exercise general jurisdiction over a defendant if the defendant's affiliations with the forum state are "so continuous and systematic" that it is "essentially at home" in the state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  "For an individual, the paradigm forum for the exercise of general jurisdiction

is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 924.

However, unlike subject matter jurisdiction, parties can consent to the personal jurisdiction of a particular forum or court. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. ----, 143 S. Ct. 2028, 2039 (2023). This consent may be express or implied. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *see also Butler v. Daimler Trucks N. Am., LLC*, 433 F. Supp. 3d 1216, 1235 (D. Kan. 2020) (collecting cases in support of the proposition that a defendant "may consent to personal jurisdiction explicitly, such as through a forum selection clause or some other agreement, or implicitly through its actions, for example, by appearing in court and arguing the merits of the case") (footnote and quotations omitted)). If a party consents to the exercise of a particular state's personal jurisdiction, the Court need not determine whether the defendant's contacts with the forum state are sufficient to meet minimum due process requirements. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018); *see also Mallory*, 143 S. Ct. at 2039.

## ANALYSIS

In its Motion to Dismiss, PJF argues that the Court lacks personal jurisdiction over the company, raising arguments as to both general jurisdiction and specific jurisdiction. [Doc. 23 at 5–8]. In its Response, CEC's sole contention is that this Court has general jurisdiction over PJF because PJF has consented to the personal jurisdiction of Colorado courts. [Doc. 36 at 1]. CEC notes that PJF has registered to do business in the state of Colorado and has designated a registered agent for service of process in the state. [*Id.* at 5]; *see also* [Doc. 36-2; Doc. 36-3]. Based on these

activities, CEC concludes, without substantial supporting argument, that PJF has consented to the personal jurisdiction of Colorado courts.  [Doc. 36 at 5].[2]

CEC primarily relies on *Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917), asserting that "[t]he United States Supreme Court has long recognized that a corporate defendant like PJF may consent to general jurisdiction by registering to do business in a foreign state." [Doc. 36 at 4].  In *Pennsylvania Fire*, a Pennsylvania insurance provider issued an insurance policy to an Arizona company; the insurance policy covered buildings located in Colorado.  243 U.S. at 94.  To recover for losses sustained on the Colorado property, the Arizona company sued the Pennsylvania insurer in Missouri, where the insurer had obtained a license to do business.  *Id.*  In compliance with a Missouri statute, when obtaining that license, the insurer had filed with the Missouri superintendent of insurance "a power of attorney consenting that service of process upon the superintendent [of insurance] should be deemed personal service upon the company so long as it should have any liabilities outstanding in the state," *id.*, which "made service on the superintendent the equivalent of personal service."  *Id.* at 95.

The Arizona company argued that service of process should be quashed on the grounds that, because the underlying cause of action was unrelated to Missouri, the Missouri registration statute violated the Due Process Clause.  *See Gold Issue Min. & Mill. Co. v. Pennsylvania Fire Ins. Co. of Phila.*, 184 S.W. 999, 1002 (Mo. 1916) (en banc) ("*Gold Issue*").  The Supreme Court of Missouri rejected this argument and decided that, based on the Missouri registration statute, the out-of-state insurer had consented to be sued in Missouri when it obtained a license to do business

---

[2] CEC does not argue that the Court has specific personal jurisdiction over PJF or that PJF is "at home" in Colorado for purposes of general personal jurisdiction.  *See generally* [Doc. 36].  Therefore, the Court's analysis is limited to whether PJF has consented to the general personal jurisdiction of Colorado courts through its registration as a foreign entity and its maintenance of a registered agent for service of process within the state.

in the state, finding that "there [was] no constitutional objection to a state's exacting a consent from foreign corporations to any jurisdiction which it may please, as a condition of doing business." *Id.* at 1012.  On appeal, the United States Supreme Court agreed with the Missouri high court's determination, finding that Missouri's exercise of personal jurisdiction over the Pennsylvania corporation did not violate the Due Process Clause.  *Pennsylvania Fire*, 243 U.S. at 95;[3] *see also Mallory*, 143 S. Ct. at 2037 ("*Pennsylvania Fire* held that suits premised on these [consent] grounds do not deny a defendant due process of law.")

A few years later, the Supreme Court was faced with a similar issue in *Robert Mitchell Furniture Co. v. Selden Breck Construction Co.*, 257 U.S. 213 (1921).  In this case, a Missouri corporation had conducted limited business in Ohio and had designated a registered agent for service in Ohio, as required by Ohio statute.  *Robert Mitchell*, 257 U.S. at 215.  An Ohio corporation sued the Missouri corporation in Ohio based on an alleged failure to perform on the parties' contract.  *Id.* at 214.  The Supreme Court determined that the designation of a registered agent in Ohio was insufficient to subject the Missouri corporation to the personal jurisdiction of Ohio courts, reasoning that

> [u]nless the state law [requiring appointment of a registered agent] either expressly or by local construction gives to the appointment a larger scope, we should not construe it to extend to suits in respect of business transacted by the foreign corporation elsewhere, at least if begun, as this was, when the long previous appointment of the agent is the only ground for imputing to the defendant an even technical presence.

*Id.* at 216.  Thus, *Pennsylvania Fire* and *Robert Mitchell*, taken together, instruct that although the exercise of personal jurisdiction over a non-resident corporate defendant in a suit unrelated to the

---

[3] In 2017, the Supreme Court of Missouri held that Missouri registration statutes did not contemplate implied consent to the personal jurisdiction of Missouri courts, abrogating *Gold Issue*. *See State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 52–53, n.11 (Mo. 2017).

forum state does not *per se* create due process concerns, state laws that set out certain prerequisites to conduct business within the state—such as registering in the state or designating a registered agent—should not be construed to also require a compliant company's consent to the state's personal jurisdiction, unless the provision requiring that consent is set forth "either expressly [in the statute] or by local construction." *Id.*; *see also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 137 (4th Cir. 2020) ("Under the rules set out in *Pennsylvania Fire* and *Robert Mitchell Furniture*, obtaining the necessary certification to conduct business in a given state amounts to consent to general jurisdiction in that state only if that condition is explicit in the statute or the state courts have interpreted the statute as imposing that condition.").

In the years since *Pennsylvania Fire* was decided, courts have questioned its continued viability in light of more recent precedent. In 1945, the Supreme Court decided *International Shoe*, which analyzed the state of Washington's authority to exercise personal jurisdiction over a foreign corporate defendant that was not registered to do business in Washington and did not have offices in Washington, but did employ some salesmen in Washington. *Int'l Shoe*, 326 U.S. at 313–14. The Supreme Court concluded that Washington's exercise of personal jurisdiction over the corporation did not offend due process, explaining that the corporation's activities in the state "were neither irregular nor casual," but were "systematic and continuous," such that it was "evident that [its] operations establish[ed] sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which [the corporation] has incurred there"—i.e., it was appropriate for the Washington court to exercise specific jurisdiction over the corporate defendant. *Id.* at 320; *see also Daimler*, 571 U.S. at 138 ("[T]he words 'continuous and systematic' were used in *International Shoe* to describe instances in which the exercise of specific jurisdiction would be

appropriate."). And many years later, the Supreme Court clarified that general personal jurisdiction over a foreign corporation is appropriate when the corporation's affiliations with the forum state "are so 'continuous and systematic' as to render [the corporation] essentially at home in the forum State." *Goodyear*, 564 U.S. at 919; *see also Daimler*, 571 U.S. at 139. In *Daimler*, the Supreme Court acknowledged the "possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State," 571 U.S. at 139 n.19, but emphasized that the "paradigm forum" to exercise general jurisdiction over a foreign corporate defendant would be the corporation's principal place of business and state of incorporation. *Id.* at 137.

Given this guidance on the limited nature of general personal jurisdiction and the related due process concerns, some courts have expressed difficulty in reconciling *Pennsylvania Fire* with *Goodyear* and *Daimler*. *See, e.g.*, *Brown*, 814 F.3d at 639 ("The sweeping interpretation that a state court gave to a routine registration statute and an accompanying power of attorney that *Pennsylvania Fire* credited as a general 'consent' has yielded to the doctrinal refinement reflected in *Goodyear* and *Daimler* and the Court's 21st century approach to general and specific jurisdiction in light of expectations created by the continuing expansion of interstate and global business."); *Fidrych*, 952 F.3d at 136 ("[W]e find it difficult to reconcile the *Pennsylvania Fire* approach with the modern view of general jurisdiction expressed in the Supreme Court's recent cases."). PJF also appears to question CEC's reliance on *Pennsylvania Fire*. *See* [Doc. 45 at 2 (noting that *Pennsylvania Fire* was "decided nearly 30 years before the Supreme Court's landmark decision in *International Shoe* . . . holding that a party, particularly a corporation, *may* be subject to jurisdiction of a state court if it has minimum contacts with the state") (emphasis in original)].

But recently, the Supreme Court clarified that *Pennsylvania Fire* and *International Shoe*, with its progeny, "sit comfortably side by side." *Mallory*, 143 S. Ct. at 2038.[4]  As explained by the *Mallory* plurality:

> *Pennsylvania Fire* held that an out-of-state corporation that *has* consented to in-state suits in order to do business in the forum is susceptible to suit there. *International Shoe* held that an out-of-state corporation that *has not* consented to in-state suits may also be susceptible to claims in the forum State based on "the quality and nature of [its] activity" in the forum.  Consistent with all this, our precedents applying *International Shoe* have long spoken of the decision as asking whether a state court may exercise jurisdiction over a corporate defendant "'that *has not consented* to suit in the forum.'"  Our precedents have recognized, too, that "express or implied consent" can continue to ground personal jurisdiction—and consent may be manifested in various ways by word or deed.

*Id.* at 2039 (emphasis in original and citations omitted).  In other words, the *Mallory* decision recognizes that the jurisdictional due process "minimum contacts" or "at home" analysis is not applicable where a party consents to a state's jurisdiction.  *See id.*  The *Mallory* Court concluded that the Pennsylvania statute which required foreign entities to register to do business in the state and, simultaneously, provided that such registration amounted to the entity's consent to personal jurisdiction in the state, *see* 42 Pa. Cons. Stat. § 5301(a)(2)(i), did not violate the Due Process Clause.  *Mallory*, 143 S. Ct. at 2044–45.  The question before this Court, then, is whether PJF, by registering to do business in Colorado and/or designating a registered agent in Colorado, consented to the personal jurisdiction of Colorado courts.

To answer this question, the Court looks to the applicable state statutes and state court decisions interpreting those laws.  *See Fidrych*, 952 F.3d at 137 ("Under the rules set out in *Pennsylvania Fire* and *Robert Mitchell Furniture*, obtaining the necessary certification to conduct business in a given state amounts to consent to general jurisdiction in that state only if that

---

[4] *Mallory* was decided after briefing on the Motion to Dismiss was completed.

condition is explicit in the statute or the state courts have interpreted the statute as imposing that condition."); *King v. Am. Fam. Mut. Ins. Co.*, 632 F.3d 570, 576 (9th Cir. 2011) ("[F]ederal courts must, subject to federal constitutional restraints, look to state statutes and case law in order to determine whether a foreign corporation is subject to personal jurisdiction in a given case because the corporation has appointed an agent for service of process.").  CEC directs the Court to no Colorado statute that expressly notifies a non-resident corporation that, by registering to do business in Colorado (or by designating a registered agent in Colorado), the corporation consents to the personal jurisdiction of this state, *see generally* [Doc. 36], and the Court could not locate any such express authority through its independent research.  The statutes requiring corporations to register in this state provide:

> A foreign entity shall not transact business or conduct activities in this state except in compliance with this part 8 and not until its statement of foreign entity authority is filed in the records of the secretary of state.
>
> * * *
>
> A foreign entity that has authority to transact business or conduct activities in this state has the same rights and privileges as, but no greater rights or privileges than, and, except as otherwise provided by this title, is subject to the same duties, restrictions, penalties, and liabilities imposed upon, a functionally equivalent domestic entity.

Colo. Rev. Stat. §§ 7-90-801(1), 7-90-805(2).

In addition, the statute requiring the designation of a registered agent in Colorado provides:

> (1)   Every domestic entity for which a constituent filed document is on file in the records of the secretary of state and every foreign entity authorized to transact business or conduct activities in this state shall continuously maintain in this state a registered agent that shall be:
>
> > (a)   An individual who is eighteen years of age or older whose primary residence or usual place of business is in this state;
> >
> > (b)   A domestic entity having a usual place of business in this state; or

> (c)   A foreign entity authorized to transact business or conduct activities in this state that has a usual place of business in this state.
>
> (2)   An entity having a usual place of business in this state may serve as its own registered agent.
>
> (3)   Any document delivered to the secretary of state for filing on behalf of an entity that appoints a person as the registered agent for the entity shall contain a statement that the person has consented to being so appointed.

*Id.* § 7-90-701.

The Colorado registration statutes are similar to the Pennsylvania statutes at issue in *Mallory*, providing that an out-of-state corporation registered in Pennsylvania "shall enjoy the same rights and privileges as a domestic entity and shall be subject to the same liabilities, restrictions, duties and penalties imposed on domestic entities." *See* 15 Pa. Cons. Stat. § 402(d); *Mallory*, 143 S. Ct. at 2037. But unlike *Mallory*, Colorado law is not "explicit that 'qualification as a foreign corporation' shall permit state courts to 'exercise general personal jurisdiction' over a registered foreign corporation, just as they can over domestic corporations." *Mallory*, 143 S. Ct. at 2037 (quoting 42 Pa. Cons. Stat. § 5301(a)(2)(i)). Indeed, neither § 7-90-801 nor § 7-90-805 expressly informs foreign entities that by registering to do business in Colorado, or by designating a Colorado registered agent, they are consenting to the personal jurisdiction of Colorado courts, and CEC does not argue that they do. *See generally* [Doc. 36]; *see also Fidrych*, 952 F.3d at 137 (rejecting an argument that a statutory provision stating that foreign corporations registered to do business in South Carolina would be "subject to the same duties, restrictions, penalties, and liabilities" as a domestic corporation rendered foreign corporations registered to do business in South Carolina subject to the personal jurisdiction of South Carolina courts); *Waite*, 901 F.3d at 1321 (reaching the same conclusion with respect to identical language in Florida statute). Thus, nothing in these statutory provisions "would alert a corporation that its compliance would be

construed as consent" to Colorado courts' personal jurisdiction.  *See Waite*, 901 F.3d at 1320; *compare* Kan. Stat. Ann. § 17-7931(g) ("Before doing business in the state of Kansas, a foreign covered entity shall register with the secretary of state.  In order to register, a foreign covered entity shall submit to the secretary of state . . . an application for registration as a foreign covered entity, setting forth . . . *an irrevocable written consent of the foreign covered entity that actions may be commenced against it in the proper court of any county where there is proper venue*") (emphasis added); 42 Pa. Cons. Stat. § 5301(a)(2)(i) ("The existence of any of the following relationships between a person and this Commonwealth *shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person* . . . (2) Corporations (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.") (emphasis added).[5]  Nor does CEC identify any other Colorado statute that provides such explicit direction.  *See generally* [Doc. 36].  Because these statutes do not expressly inform foreign corporations of any personal jurisdiction consequences of registering to do business or designating an agent in the state, these laws cannot serve as a basis to find PJF's implied consent to Colorado courts' personal jurisdiction.  *Robert Mitchell*, 257 U.S. at 216; *Waite*, 901 F.3d at 1321–22.

In the alternative, the Court may find implied consent to Colorado courts' personal jurisdiction if state court decisions make it clear that by registering to do business in Colorado or designating a registered agent in Colorado, a business has consented to Colorado courts' personal jurisdiction.  *Robert Mitchell*, 257 U.S. at 216; *Fidrych*, 952 F.3d at 137.  *See, e.g.*, *Cooper Tire*

---

[5] Courts have concluded that each of these statutes is sufficient to render a corporation's registration to do business in a state as implied consent to the state's personal jurisdiction, without violating the Fourteenth Amendment's due process clause.  *See Butler*, 433 F. Supp. 3d at 1237; *Mallory*, 143 S. Ct. at 2044.

& *Rubber Co. v. McCall*, 863 S.E.2d 81, 90 (Ga. 2021) (concluding that a previous Georgia Supreme Court case holding that registration to do business in state operating as consent to jurisdiction of state did not offend due process because although the statute did not expressly provide notice, prior court holding did provide notice), *cert. denied*, No. 21-926, 2023 WL 4278453 (U.S. June 30, 2023).  CEC directs the Court to two cases—one case from the Colorado Court of Appeals and one case from the Tenth Circuit applying Colorado law—and cursorily argues that "[u]nder the[se] authorities . . . PJF has consented to personal jurisdiction in the State of Colorado." [Doc. 36 at 5].

The Court first considers CEC's reliance on *Packaging Store, Inc. v. Kwan Leung*, 917 P.2d 361 (Colo. App. 1996), which CEC cites for the proposition that "[a] defendant may, by consent, confer personal jurisdiction upon a court that would otherwise not have jurisdiction over it, and one of the most solidly established ways of giving such consent is to designate an agent for service of process within the state." *See* [Doc. 36 at 5 (quoting *Packaging Store*, 917 P.2d at 363)]. However, CEC fails to acknowledge the factual circumstances of *Packaging Store*, which are materially distinct from the circumstances of the instant case, or the context of the quoted statement.  In *Packaging Store*, the parties had entered into a contractual agreement wherein the defendant agreed that it

> irrevocably constitutes and appoints the Corporation Company, 1700 Broadway, Denver, Colorado, or its successor in office, to be its true and lawful agent within Colorado, to receive service of any lawful process in any non-criminal suit, action or proceedings arising under any provision of this Franchise Agreement and to be served upon [the defendant] personally.

917 P.2d at 362.  In addition, the defendant agreed that any dispute between the parties would "be resolved, if legally possible, in a state court located within the City and County of Denver, State of Colorado."  *Id.*

In holding that the defendant's assent to the contract amounted to a consent to Colorado personal jurisdiction, the Colorado Court of Appeals specifically noted that the "plaintiff's claim here is for a breach of the franchise agreement itself," such that the plaintiff's claim was "within the meaning of the phrase 'arising under any provision of [the] Franchise Agreement" in the parties' contract. *Id.* at 363 (alteration in original). Indeed, the court acknowledged that "Colorado courts *ha[d] not specifically addressed the issue of consent to personal jurisdiction by appointment of an agent for service of process*," but noted that "provisions in franchise agreements for appointment of such agents ha[d] been enforced and service of process upon them ha[d] been upheld." *Id.* (emphasis added). In other words, the *Packaging Store* decision was based on the parties' contractual agreement, not any interpretation of a Colorado statute requiring designation of a registered agent. *See generally id.* And the court's statement that "one of the most solidly established ways of giving such consent is to designate an agent for service of process within the state"—which is supported exclusively by out-of-state authorities—is non-binding dicta that does not "establish[] that a foreign corporation's registration to do business and appointment of an agent for service of process in [Colorado] amounts to its consent to general jurisdiction in the [Colorado] courts." *Waite*, 901 F.3d at 1321. Thus, *Packaging Store* does not constitute a "local construction" interpreting Colorado statutes to impose consent to personal jurisdiction as a condition of registration in the state or designation of an agent. *Id.*; *Fidrych*, 952 F.3d at 137; *see also Gulf Coast Bank & Tr. Co. v. Designed Conveyor Sys., L.L.C.*, 717 F. App'x 394, 397–98 (5th Cir. 2017) (finding that there was no implied consent absent "a *clear statement* from the state court construing the statute to require consent" (emphasis added)).

Next, CEC cites to *Budde v. Kentron Hawaii, Ltd.*, 565 F.2d 1145 (10th Cir. 1977), stating that in *Budde*, the Tenth Circuit "examined this question and held that a foreign corporation that

registers to do business in the State of Colorado gives implied consent to suit within the state." [Doc. 36 at 4–5]. Beyond this statement, CEC fails to make any substantive argument explaining its interpretation of *Budde* or why *Budde* is dispositive here. [Doc. 36]. In reviewing *Budde*, this Court respectfully disagrees that it is dispositive.

In *Budde*, the Tenth Circuit was concerned not with the Colorado business registration statutes, but now-repealed Colo. Rev. Stat. § 7-9-119 (1973), which governed service of process on foreign corporations. *See* 565 F.2d at 1147. The Tenth Circuit analyzed whether corporations that were "qualified to do business in Colorado" and were served in Colorado, but which were not incorporated in Colorado, were subject to Colorado state courts' jurisdiction where the cause of action did not relate to the out-of-state corporations' Colorado business activity. *Id.* at 1146. In its analysis, the court first discussed the United States Supreme Court case of *Perkins v. Benquet Consolidated Mining Co.*, 342 U.S. 437 (1952), which ruled that the Due Process Clause would not be violated by Ohio exercising personal jurisdiction over a foreign corporation in a case unrelated to the foreign corporation's activities within Ohio. *See id.* at 1147–48; *see also Perkins*, 342 U.S. 448–49. *Perkins* did not involve the question of consent and instead involved a due process analysis. *See Perkins*, 342 U.S. at 447–48; *Goodyear*, 564 U.S. at 927–28 ("Our 1952 decision in *Perkins* . . . remains '[t]he textbook case of general jurisdiction appropriately exercised over a foreign corporation that *has not consented* to suit in the forum.'" (quoting *Donahue v. Far E. Air Transp. Corp.*, 652 F.2d 1032, 1037 (D.C. Cir. 1981) (emphasis added))). Relying on *Perkins*, the Tenth Circuit concluded that it "must look to local Colorado law to resolve the present controversy." *Budde*, 565 F.2d at 1147.

The *Budde* court continued on to discuss two Colorado state-court cases. First, it stated that *White-Rodgers Co. v. District Court*, 418 P.2d 527 (Colo. 1966), had "bearing on the present

controversy." *Budde*, 565 F.2d at 1148.  In *White-Rodgers*, the petitioner—a Missouri corporation that was not licensed to do business in Colorado—sought a writ of prohibition in response to the trial court's denial of a motion to quash service of process.  418 P.2d at 493.  The petitioner argued that service of process should be quashed because the cause of action did not arise out of its "doing business" in the state of Colorado, as contemplated in the long-arm statute.  *Id.* at 494.[6]  After deciding that the court need not rely on the long-arm statute because service of process was effectuated in Colorado, the *White-Rodgers* court limited its inquiry to reviewing whether the trial court's conclusion that the defendant had sufficient minimum contacts with Colorado was supported by sufficient evidence.  *Id.* at 494–95.  The court noted that "[w]hile it is clear that casual or intermittent presence of the corporation's agent within the state is not enough to support In personam jurisdiction based upon service on an agent," when "the activities of the agent are such as to constitute a continuous course of dealings within the state, due process is not denied by the exercise of In personam jurisdiction through service on the agent in the state."  *Id.* at 496.  The *White-Rodgers* court also concluded that the cause of action need not arise out of the agent's activities within the state to comport with due process requirements.  *Id.*  After reviewing the petitioner's Colorado contacts made through its agent, which were "systematic and continuous" and "carried on over a period of years," the Colorado Supreme Court held that the evidence before

---

[6] *See* Wright & Miller et al., 4 Fed. Prac. & Proc. Civ. § 1066 (4th ed. 2023 update) (explaining the transformation of the personal jurisdiction doctrine in the nineteenth and twentieth centuries and discussing how courts determined whether a corporation was "doing business" in a state to determine whether the defendant was subject to service in the state); *see also Colo. Builders' Supply Co. v. Hinman Bros. Const. Co.*, 304 P.2d 892, 896 (Colo. 1956) ("Jurisdiction over persons and corporations who are made defendants in actions in personam is based upon the concept of 'presence within the state.'  In the case of foreign corporations 'presence' has been construed to mean doing business within the state."); *Begole Aircraft Supplies v. Pac. Airmotive Corp.*, 212 P.2d 860, 862 (Colo. 1949) (concluding that the defendant "was not engaged in 'doing business' in Colorado in a way that would bring it within the jurisdiction of the Colorado courts").

the trial court was sufficient to support the trial court's decision that the petitioner was "doing business" in Colorado. *Id.* at 497–98. *White-Rodgers* too involved a due process analysis and did not discuss consent to jurisdiction by designating a registered agent in Colorado. *See Allied Carriers Exch., Inc. v. All. Shippers, Inc.*, No. CV 98-WM-2744, 1999 WL 35363796, at *4 (D. Colo. Sept. 22, 1999) (describing *White-Rodgers* as "a case in which the court analyzed whether the defendant's contacts satisfied the Due Process Clause"). The *Budde* court relied on *White-Rodgers* to recognize that a cause of action need not arise out of the defendant's affiliations with the forum state "where there is personal service on a foreign corporation within the State of Colorado." *Budde*, 565 F.2d at 1149.

The *Budde* court also concluded that *Allison Drilling Co., Inc. v. Kaiser Steel Corp.*, 502 P.2d 967 (Colo. App. 1972), *disapproved of on other grounds by McDonnell-Douglas Corp. v. Lohn*, 557 P.2d 373, 374 (Colo. 1976), had "bearing" on the case. *Budde*, 565 F.2d at 1149. In *Allison*, a Texas corporate plaintiff sued a Nevada corporate defendant in Colorado state court, and the trial court dismissed the action based on the doctrine of forum non conveniens. 502 P.2d at 967–68. The appeal to the *Allison* court "presented the sole question of whether the doctrine of Forum non conveniens [was] available in Colorado as a ground for refusal by a court to exercise jurisdiction over a transitory cause of action which arose outside the state." *Id.* at 968. The court answered this question in the affirmative. *Id.* at 969. As noted by the *Budde* court, the *Allison* court stated, in dicta, that "[t]hough properly invoked, jurisdiction in this instance remained subject to the discretionary power of the trial court to decline its exercise." *Id.*; *see also id.* at 970 (Coyte, J., dissenting) ("The court had jurisdiction of the parties and of the subject matter of the action."). But the *Allison* court did not make any actual holdings with respect to the exercise of personal jurisdiction.

"Based on *White-Rodgers* and *Allison*," the *Budde* court concluded that "Colorado state courts . . . have jurisdiction over a foreign corporation qualified to do business in the state where personal service on the foreign corporation is effected within the state, regardless of the fact that the cause of action does not arise out of the foreign corporation's business activity within the state and to the contrary arises out of a transaction occurring in another state." 565 F.2d at 1149. CEC relies heavily on this language. *See* [Doc. 36 at 4–5]. Thus, the Court turns to consider whether *Budde* stands for the proposition that any foreign corporation who is registered to business in Colorado and has a registered agent in the state necessarily consent to personal jurisdiction in this forum consistent with *Robert Mitchell* and *Mallory*.

The Court first notes that § 7-9-119, the statute at issue in *Budde*, was repealed effective July 1, 1994 by House Bill 93-1154, when the Colorado legislature substantially amended and recodified the Colorado Corporation Code. *See* H.B. 93-1154, effective July 1, 1994. CEC points to no corresponding statutory citation that is currently in effect and applicable to PJF. *See generally* [Doc. 36]. And this Court respectfully declines to make any argument on behalf of a party who has been represented by counsel since its entry into this case. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *see also Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (a court has no obligation to make arguments or perform research on behalf of litigants). Furthermore, this Court notes that Colorado's long-arm statute sets out the jurisdiction of courts with respect to non-resident defendants and provides:

> (1)   Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person and, if a natural person, such person's personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:

(a)  The transaction of any business within this state;

(b)  The commission of a tortious act within this state;

(c)  The ownership, use, or possession of any real property situated in this state;

(d)  Contracting to insure any person, property, or risk residing or located within this state at the time of contracting;

(e)  The maintenance of a matrimonial domicile within this state with respect to all issues relating to obligations for support to children and spouse in any action for dissolution of marriage, legal separation, declaration of invalidity of marriage, or support of children if one of the parties of the marriage continues without interruption to be domiciled within the state;

(f)  The engaging of sexual intercourse in this state as to an action brought under article 4 or article 6 of title 19, C.R.S., with respect to a child who may have been conceived by that act of intercourse, as set forth in verified petition; or

(g)  The entering into of an agreement pursuant to part 2 or 5 of article 22 of this title.

Colo. Rev. Stat. § 13-1-124.  There is no mention of registration of a foreign corporation or the existence of a registered agent conferring jurisdiction to the state courts, *id.*, and CEC has not argued that any of these provisions apply here.

In addition, the *Budde* decision does not constitute a "local construction" of state law, as contemplated in *Robert Mitchell*, as it is issued by a federal, rather than a state, court. *See Robert Mitchell*, 257 U.S. at 216; *see also Fidrych*, 952 F.3d at 137 ("[O]btaining the necessary certification to conduct business in a given state amounts to consent to general jurisdiction in that state only if that condition is explicit in the statute or the *state courts* have interpreted the statute as imposing that condition." (emphasis added)); *Waite*, 901 F.3d at 1319 ("[W]hether appointing an agent for service of process subjects a foreign defendant to general personal jurisdiction in the forum depends upon the state statutory language and *state court decisions* interpreting it."

(emphasis added)).  For all of these reasons, this Court concludes that *Budde*, *White-Rodgers*, and *Allison*, separately or together, do not constitute clear local authority providing notice to out-of-state entities that by registering to do business in Colorado, or by designating an agent in Colorado, those entities consent to Colorado personal jurisdiction.[7]

Indeed, if anything, Colorado jurisprudence suggests that mere registration or designation does not amount to consent to personal jurisdiction under Colorado law.  In *Magill v. Ford Motor Co.*, 379 P.3d 1033 (Colo. 2016)—a case cited by neither CEC nor PJF—the Colorado Supreme Court considered whether the defendant, Ford Motor Company ("Ford"), was subject to either general or specific personal jurisdiction.  Ford argued that the Colorado state district court lacked personal jurisdiction over it because it was not "at home" in Colorado, so as to justify general jurisdiction, and because the lawsuit did not arise out of its contacts with Colorado, which might justify specific jurisdiction.  *Id.* at 1036.  The Colorado Supreme Court concluded that Ford was not subject to general personal jurisdiction in Colorado because the company could not be deemed

---

[7] For purposes of comparison, the Georgia Supreme Court has "notif[ied] out-of-state corporations that their corporate registration will be treated as consent to general personal jurisdiction in Georgia."  *See Cooper Tire*, 863 S.E.2d at 90 (referencing *Allstate Ins. Co. v. Klein*, 422 S.E.2d 863 (Ga. 1992)).  The *Klein* decision was based on the language of Georgia's long-arm statute, which defined "nonresident" as, *inter alia*, "a corporation which is not organized or existing under the laws of this state and is not authorized to do or transact business in this state."  Ga. Code § 9-10-90.  The Georgia Supreme Court reasoned that "[i]t is apparent from the language of this definition that a corporation which is 'authorized to do or transact business in this state at the time a claim' arises is a 'resident' for purposes of personal jurisdiction over that corporation in an action filed in the courts of this state."  *Klein*, 422 S.E.2d at 865 (quoting Ga. Code § 9-10-90).  It follows that "[a]s a resident, such a foreign corporation may sue or be sued to the same extent as a domestic corporation" in Georgia.  *Id.*  Thus, although the applicable Georgia registration statutes did not "expressly notify out-of-state corporations that obtaining authorization to transact business in this State and maintaining a registered office or registered agent in this State subjects them to general jurisdiction in our courts," the *Klein* decision provided sufficient notice that by registering to do business in Georgia, a corporation consents to the personal jurisdiction of Georgia courts.  *Cooper Tire*, 863 S.E.2d at 434.  CEC directs the Court to no Colorado authority providing this level of clarity with respect to consent.

"at home" in Colorado.  *Id.* at 1039.  This was the case even though Ford was served in Colorado, "maintain[ed] offices and businesses in Colorado, ha[d] a registered agent in Colorado, and train[ed] and certifie[d] mechanics to work with Colorado consumers."  *Id.* at 1036, 1038.

Though the Colorado Supreme Court was conducting a due process analysis instead of a consent analysis, the *Magill* decision suggests to this Court that the Colorado Supreme Court would not agree with the *Budde* court's blanket statement that Colorado state courts have jurisdiction over out-of-state companies that are "qualified to do business in the state" and served in the state.  *Budde*, 565 F.2d at 1149.  In the context of discussing venue, the Colorado Supreme Court expressly rejected the concept that a corporation "resides" where its registered agent was located and expressly stated that "[n]othing in this language [that requires foreign corporations to have a place of business and authorized registered agent in Colorado] converts a nonresident corporate defendant to a resident."  *Magill*, 379 P.3d at 1040–41.  And because CEC has directed the Court to no other Colorado law clearly demonstrating that such consent is implied when a business registers in the state, and because CEC raises no other argument outside of its consent argument, CEC has not met its burden of establishing this Court's personal jurisdiction over PJF.  Accordingly, the Court concludes that it lacks personal jurisdiction of PJF.  The Motion to Dismiss is respectfully **GRANTED**.

## CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that:

(1)     The Third-Party Defendant's Motion to Dismiss for Lack of Personal Jurisdiction Renewed Motion to Dismiss [Doc. 23] is **GRANTED**;

(2)     CEC Group, LLC's claims against Paul J. Ford Company are **DISMISSED without** prejudice for lack of personal jurisdiction;

(3)    The Clerk of Court is **DIRECTED** to terminate Paul J. Ford Company as a third-party Defendant in this case; and

(4)    Paul J. Ford Company is **AWARDED** its costs pursuant to Fed. R. Civ. P. 54 and D.C.COLO.LCivR 54.1.

DATED:  September 8, 2023                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge