**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-00253-NYW-KAS

LUMEN TECHNOLOGIES SERVICE GROUP, LLC f/k/a CENTURYTEL SERVICE GROUP, LLC,

    Plaintiff,

v.

CEC GROUP, LLC f/k/a COMMUNICATIONS ENGINEERING CONSULTANT, LLC,

    Defendant.

---

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Renewed Motion for Summary Judgment (the "Motion" or "Motion for Summary Judgment"). [Doc. 91]. The Court has reviewed the Motion and the related briefing, the applicable case law, and the record before the Court. For the reasons set forth in this Order, the Motion for Summary Judgment is respectfully **DENIED**.

## BACKGROUND

The Court has set out the background of this case in prior orders, *see* [Doc. 76; Doc. 88], and repeats only a limited portion of the general background here. This case arises out of a Master Agreement (the "Agreement") between Plaintiff Lumen Technologies Service Group, LLC ("Plaintiff" or "Lumen") and Defendant CEC Group, LLC ("Defendant" or "CEC"). [Doc. 8 at ¶ 1]. Broadly speaking, Plaintiff alleges that Defendant, through its subcontractor, breached the Agreement by furnishing an inadequate structural engineering analysis of a building Lumen sought to purchase. [*Id.*

at ¶¶ 2–6]. Plaintiff asserts claims for breach of contract, breach of warranty, and breach of express indemnity. [*Id.* at ¶¶ 30–47].

This case has been through multiple rounds of summary-judgment briefing,[1] and the Court has determined as a matter of law that Defendant is liable under the Agreement to the extent Plaintiff was damaged by the acts or omissions of Defendant's subcontractor. [Doc. 76 at 15–16]. Defendant now moves for summary judgment on all of Plaintiff's claims, arguing that Plaintiff's claims are time-barred. [Doc. 91]. The question presented in the Parties' briefs is whether the Agreement's Delaware choice-of-law provision requires application of Delaware's statute of limitations to Plaintiff's claims, as Plaintiff contends, or whether another state's statute of limitations applies—such as Florida's, as Defendant contends. *See* [Doc. 91; Doc. 94; Doc. 96]. The Court addresses the Parties' arguments below.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A

---

[1] In November 2024, the Court concluded that it could not answer the choice-of-law question on the then-pending summary judgment briefing and ordered additional briefing addressing two questions, including one related to § 187(1) of the Restatement (Second) Conflicts of Law. [Doc. 76 at 12–14]. After the Parties submitted that additional briefing, the Court slightly amended its prior ruling and held that Colorado has not expressly adopted § 187(1) of the Restatement. [Doc. 88 at 7–10]. But the Court still concluded that it could not definitively decide the choice-of-law question based on the Parties' briefs. [*Id.* at 10–14]. Accordingly, the Court found it appropriate to grant Plaintiff's Motion to Submit Additional Evidence and require the Parties to submit entirely new summary judgment briefing. [*Id.* at 14–17]. The Parties have now done so. The Court appreciates the Parties' efforts in litigating this case and in making well-presented arguments addressing a difficult and complex legal question.

2

dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (cleaned up).

A movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986)). Once this movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted). But "if the moving party has the burden of proof [at trial], a more stringent summary judgment standard applies." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). A moving party who bears the burden at trial "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.*

When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views each motion in the light most favorable to the nonmoving party. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

3

## UNDISPUTED MATERIAL FACTS

The following facts are drawn from the summary judgment record and are undisputed unless otherwise noted:

1. Plaintiff and Defendant entered into the Agreement in 2016. [Doc. 91 at ¶ 17; Doc. 94 at 4 ¶ 18;[2] Doc. 91-7].

2. The Agreement contains a choice-of-law provision that states: "This Agreement and the rights and obligations of the parties are governed by the laws of the State of Delaware without regard to any conflict of laws principles." [Doc. 91 at ¶ 18; Doc. 94 at 4 ¶ 19; Doc. 91-7 at 2 § 14.8 (emphasis omitted)].

3. Pursuant to the Agreement, CEC agreed to provide Lumen a structural analysis of the loading capacity of the floors of a Florida building that Lumen was considering purchasing. [Doc. 91 at ¶¶ 1–2; Doc. 94 at 2–3 ¶¶ 1–2;[3] Doc. 8 at ¶¶ 2, 14, 16].

4. CEC hired an engineering firm to perform the structural analysis, and that firm provided an opinion about the load capacity of the Florida building's floors. [Doc. 91 at ¶¶ 3, 6; Doc. 94 at 3 ¶¶ 4, 7; Doc. 8 at ¶ 19; Doc. 91-2].

5. In February 2020, a portion of the second-floor slab at the Florida property "collapsed." [Doc. 91 at ¶ 13; Doc. 94 at 4 ¶ 14; Doc. 8 at ¶¶ 5, 26].

---

[2] On page 3 of its Response, Lumen appears to begin misnumbering its responses to Defendant's statement of undisputed material facts. *See* [Doc. 94 at 2–3]. From the Court's review, however, Plaintiff's responsive paragraphs are off by just one number, and the Court is able to ascertain which of Defendant's affirmative assertions correspond with Plaintiff's responsive assertions.

[3] Although Plaintiff disputes certain portions of Defendant's assertions, Plaintiff does not dispute that CEC agreed to provide a loading capacity analysis of the building. *See* [Doc. 94 at 2–3 ¶¶ 1–2].

6.     Plaintiff alleges that Defendant breached the Agreement by providing an incorrect estimate of the second floor's structural capacity. [Doc. 91 at ¶ 16; Doc. 94 at 4 ¶ 17; Doc. 91-5 at ¶ 7].

## ANALYSIS

As previewed above, the question presented to the Court in Defendant's summary judgment motion is which state's law supplies the statute of limitations for Plaintiff's claims. *See* [Doc. 91 at 8]. Defendant argues that a two-year statute of limitations codified by Florida statute applies to Plaintiff's claims. [*Id.* at 8–16]. Defendant's argument goes as follows: notwithstanding the choice-of-law provision, the Court must apply Colorado conflict-of-law rules. [*Id.* at 8]. Defendant recognizes that, under Colorado law, if a claim is based on the substantive law of another state, that other state's statute of limitations also typically applies to the claim. [*Id.*]. But, Defendant asserts, under Colorado's borrowing statute—Colo. Rev. Stat. § 13-80-110—a cause of action that arose in another state cannot be asserted in Colorado if the action could not be maintained in that other state. [Doc. 91 at 8–9]. Defendant argues that Plaintiff's claims arose in Florida and concludes that because Plaintiff's claims would be deemed untimely if filed in Florida, then the borrowing statute bars Plaintiff's claims in this case. [*Id.* at 9–12].

Lumen disagrees. It contends that the Parties agree that the choice-of-law provision is valid and enforceable, and as a result, no traditional conflict-of-law analysis is necessary. [Doc. 94 at 8–11]. In support, it relies on the Restatement (Second) of Conflict of Laws (A.L.R. 1971) (the "Restatement"), which provides that the law chosen by the Parties "will be applied" unless the chosen state has no substantial relationship to

5

the parties or the transaction and there is no other reasonable basis for the parties' choice, or the parties' choice contravenes a fundamental policy of the state whose law would otherwise apply.  [*Id.*]; Restatement § 187(2); *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979) (adopting the Restatement for contract actions).  Plaintiff also directs the Court to the Agreement's express language, which provides that the choice-of-law provision governs the rights of the Parties "without regard to any conflict of law[s] principles."  [Doc. 94 at 10].  Plaintiff maintains that Colorado law requires this Court to apply the law chosen by the Parties, and asserts that Defendant cannot invoke Colorado's borrowing statute to invalidate the Parties' binding agreement.  [*Id.* at 11–14].

In its reply brief, Defendant asserts that the Restatement "requires application of Colorado's borrowing statute without consideration of [Restatement] section 187."  [Doc. 96 at 10 (emphasis omitted and capitalization altered)].  Defendant's argument relies on § 6 of the Restatement, which instructs that a "court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law."  Restatement § 6(1).  *See* [Doc. 96 at 10].

Because the Court has diversity jurisdiction over this case, *see* [Doc. 8 at ¶ 10], the Court applies the conflict-of-law rules of the forum state, *Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1310 (10th Cir. 2014).[4]  Colorado courts have instructed

---

[4] In Colorado, "[a]ny conflict of laws analysis begins, perforce, with a determination whether a conflict actually exists." *Richardson v. Allstate Fire & Cas. Ins. Co.*, 637 F. Supp. 3d 1186, 1190 (D. Colo. 2022).  If there is no outcome-determinative conflict of law, then there is no need to engage in a choice-of-law analysis. *Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*, 861 F. Supp. 2d 1256, 1264 (D. Colo. 2012).  Here, the Parties assert that an outcome-determinative conflict of law exists because if (1) Defendant is correct that Florida law applies, and (2) Defendant is correct that

that "[c]hoice of law provisions are ordinarily given effect as they are considered a clear manifestation of the parties' intentions." *Mountain States Adjustment v. Cooke*, 412 P.3d 819, 822 (Colo. App. 2016). Choice-of-law provisions "will be applied" in Colorado courts unless there is no reasonable basis for the parties' choice or applying the chosen law would contravene a fundamental policy of the state whose law would otherwise govern. *Id.* at 823 (quotation omitted). This practice reflects the principles set forth in § 187 of Restatement, *see* Restatement § 187(2)(a), as well as Colorado's "strong commitment to the freedom of contract," *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1047 (Colo. 2011); *see also City & Cnty. of Denver v. Dist. Ct.*, 939 P.2d 1353, 1361 (Colo. 1997) ("The right of parties to contract freely is well developed in our jurisprudence."). Consistent with these principles, Colorado courts have reflected a preference for enforcing contractual choice-of-law provisions absent the limited exceptions identified above. *See, e.g.*, *Mountain States Adjustment*, 412 P.3d at 823; *Target Corp. v. Prestige Maint. USA, Ltd.*, 351 P.3d 493, 497 (Colo. App. 2013) ("Consistent with the Restatement . . ., we will apply the law chosen by the parties unless there is no reasonable basis for their choice or unless applying the chosen state's law would be contrary to the fundamental policy of the state whose law would otherwise govern."); *JTC Holdings, LLC v. Gary*, No. 19CA0382, 2020 WL 14046163, at *2 (Colo. App. May 21, 2020) (same).

Indeed, when interpreting a contract, the Court's task is to give effect to the Parties' intent, which is determined by the contractual language. *Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000). And when an

---

Florida's two-year statute of limitations (as opposed to a four-year statute of limitations) applies, then Plaintiff's claims would be time-barred. *See* [Doc. 91 at 12–17; Doc. 94 at 14–17].

7

agreement is unambiguous, it must be enforced as written.  *French v. Centura Health Corp.*, 509 P.3d 443, 449 (Colo. 2022).  Here, the language of the choice-of-law provision is unambiguous, and the Parties' intent seems clear—they agreed that Delaware law would govern the Agreement and the Parties' rights and obligations thereunder, notwithstanding any conflict-of-law principles.  [Doc. 91-7 at 2 § 14.8].

In an ordinary, straightforward case, it would be an easy conclusion that Delaware's statute of limitations applies to Plaintiff's claims.  Colorado's Uniform Conflict of Laws–Limitations Act ("UCL–LA") provides that if a claim "is substantively based . . . [u]pon the law of one other state, the limitation period of that state applies."  Colo. Rev. Stat. § 13-82-104(1)(a); *see also Mountain States Adjustment*, 412 P.3d at 823 ("[I]f the claim before the court is substantively based on the law of another state, the limitation period of that state applies.").  Defendant contends, however, that this is not that straightforward case.  Defendant argues that Colorado's borrowing statute trumps *both* the Parties' choice-of-law provision *and* the UCL–LA.  In support of its first point, Defendant argues that under § 6 of the Restatement, the Court is bound to apply the Colorado borrowing statute without regard to the Parties' contracted-for agreement that this case would be governed by Delaware law.  [Doc. 91 at 10–12].  Further, Defendant argues that "[i]n the event of a conflict between" the borrowing statute and the UCL–LA, the borrowing statute controls, directing the Court to the Colorado Supreme Court's decision in *Jenkins v. Panama Canal Railway Co.*  [*Id.* at 8–10 (emphasis omitted)]; *see also Jenkins v. Panama Canal Ry. Co.*, 208 P.3d 238, 242 (Colo. 2009).

The Court begins with § 6 of the Restatement, which says that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of

8

law." Restatement § 6(1). Decades ago, the Colorado Court of Appeals was tasked with deciding whether Colorado's borrowing statute required application of California's statute of limitations because the plaintiff's claims arose in California. *See Wyatt v. United Airlines, Inc.*, 638 P.2d 812, 813 (Colo. App. 1981). The court concluded that the borrowing statute must be applied "where, as here, the cause of action arises in another state and the only reason that the cause of action is not cognizable in the foreign state is plaintiff's failure to comply with that state's statute of limitations." *Id.* Although the plaintiff had argued that Restatement § 145's "most significant relationship" test for tort actions should determine the applicable law, the court rejected this approach. *Id.* It noted that § 145 expressly incorporates § 6, *see id.*; *see also* Restatement § 145(1) ("The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6."), such that § 6 "must be considered in analyzing which state has the most significant relationship to the issue," *Wyatt*, 638 P.2d at 813. But because the borrowing statute provided an answer about the applicable law, the court found it "unnecessary to consider other factors relevant to the choice of law question." *Id.* Defendant argues that *Wyatt* stands for the proposition that "if a claim arises in another state, and the statute of that limitations of that other state would bar the claim, then analysis under the Restatement is neither necessary nor appropriate." [Doc. 91 at 10].

The Court is respectfully unpersuaded by Defendant's reliance on *Wyatt*, which did not involve a contractual choice-of-law provision and is not quite on point with this case. In *Wyatt*, the plaintiff asked the court to disregard the borrowing statute and apply

9

the Restatement's most-significant-relationship test, which expressly requires consideration of the principles set out in Restatement § 6.  *See* Restatement § 145(1).  But Restatement § 187, which governs "when the parties to a contract have chosen the law to govern their contract," *Mountain States Adjustment*, 412 P.3d at 823, does not expressly or implicitly incorporate § 6, *see* Restatement § 187.  Compare this with Restatement § 188, which applies in contract cases "where the parties have *not* chosen the law to govern their contract." *Mountain States Adjustment*, 412 P.3d at 823.  Section 188 sets forth a "most significant relationship" for contract actions, and unlike § 187, § 188 *does* expressly incorporate § 6 as a relevant consideration in determining which state has the most significant relationship to the case (and which state's law should apply).  *See* Restatement § 188(1)–(2).  Stated differently, the two multi-factor tests in §§ 145 and 188 incorporate—and clearly explain—how the "statutory directive" language in § 6 factors into the choice-of-law analysis under those provisions.  The same is not true for § 187, which says that the law the Parties chose "*will be applied*" absent certain limited exceptions.  Restatement § 187(2) (emphasis added).

Thus, in *Wyatt*, it made sense for the Court to decline to apply the most significant relationship test to override the express and clear directive in § 6.  But given the material differences between *Wyatt* and the circumstances in this case, as well as Colorado's "strong commitment to the freedom of contract," *Bailey*, 255 P.3d at 1047, *Wyatt*'s somewhat cursory discussion of the interplay between § 6's "statutory directive" language and § 145's most significant relationship test for tort actions respectfully provides little guidance to the Court here.  And this Court could locate no Colorado cases discussing how—let alone if—section 6 comes into play when the Parties have executed a valid

10

choice-of-law provision, which Colorado courts strive to enforce. After all, the Colorado Supreme Court has stated that although restatements of law "can be persuasive authority," it is "not bound by the legal principles set forth in any of the restatements of law." *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509 n.1 (Colo. 2007).

The Court next turns to *Jenkins*. In *Jenkins*, Colorado residents were injured on a vacation in Panama and later brought negligence claims, under Colorado law, in Colorado court. 208 P.3d at 239–40. The defendant argued that the plaintiffs' claims were time-barred because the Colorado borrowing statute required application of Panama's one-year statute of limitations. *Id.* at 240. The question before the Court was whether Colorado's borrowing statute conflicted with the UCL–LA, and, if so, which statute prevailed in light of any conflict. *Id.* at 241. The court found that a conflict did exist, because if the borrowing statute applied, then the plaintiffs were bound by Panama's one-year statute of limitations, but if the UCL–LA applied, then the plaintiffs had the benefit of Colorado's two-year statute of limitations. *Id.*

To resolve the conflict, the court was required to consider (1) whether one statute was more specific than the other, as the more specific statute would prevail; and (2) if not, whether one statute was more recent than the other, as the more recent provision would prevail. *Id.* at 241–42. And if neither specificity nor recency could resolve the conflict, the court explained that the longer limitations period would prevail. *Id.* at 242. The *Jenkins* court found that neither statute was more specific than the other. *Id.* at 242–43. Turning to recency, the court concluded that the borrowing statute prevailed over the UCL–LA because it was enacted two years after the UCL–LA and was thus the more

11

recent statute. *Id.* at 243. The court went on to "hold [that] the borrowing statute applies to [the] claims *in this case*." *Id.* (emphasis added).

*Jenkins* does not resolve the question before the Court, for a few reasons. Like *Wyatt*, there was no enforceable choice-of-law provision that factored into the analysis in *Jenkins*. The Colorado Supreme Court was required to decide which of two conflicting statutes applied to the plaintiff's claims; it was not required to analyze whether and how a competing choice-of-law provision must be considered in the analysis.

Furthermore, other courts in this District have interpreted *Jenkins* as addressing a different subsection of the UCL–LA than the one that would apply here. *See Jenkins v. Duffy Crane & Hauling, Inc.* ("*Duffy Crane*"), No. 13-cv-00327-CMA-KLM, 2017 WL 4919221, at *5 (D. Colo. Oct. 27, 2017) ("*Jenkins* did not involve [section 13-82-104(1)(a)]; rather, the Supreme Court considered section 13-80-110 and section 13-82-104(2)." (emphasis added)); *Ehekircher v. USA Swimming, Inc.*, No. 22-cv-03322-RM-KAS, 2024 WL 4201891, at *11 & n.6 (D. Colo. Aug. 27, 2024) ("The Colorado Supreme Court has found that Colo. Rev. Stat. 13-82-104(2) was repealed by implication." (emphasis added)), *report and recommendation adopted*, 2024 WL 4591329 (D. Colo. Sept. 27, 2024). While the *Jenkins* decision was not expressly crafted in this way, the Court believes this is a reasonable interpretation of *Jenkins*. In *Jenkins*, any conflict between the borrowing statute and the UCL–LA necessarily must have been between the borrowing statute and § 13-82-104(2), as applying § 13-82-104(1)(a) would have led to the same result as applying the borrowing statute—application of Panama's one-year statute of limitations. *Cf. Jenkins*, 208 P.3d at 243 n.3 (stating that defense counsel "conceded during oral argument that [the] claims [were] substantively based on Colorado

12

law," which would implicate § 13-82-104(2), not § 13-82-104(1)). And indeed, a number of courts have continued to apply § 13-82-104(1), which is the UCL–LA provision relevant to *this* case, post-*Jenkins*. See *Mountain States Adjustment*, 412 P.3d at 823, 825 (applying Nebraska statute of limitations based on Nebraska choice-of-law provision under § 13-82-104(1)(a)); *Lehman Bros. Holdings v. Universal Am. Mortg. Co.*, 660 F. App'x 554, 558 n.2 (10th Cir. 2016) (applying Colorado choice-of-law rules and § 13-82-104(1)(a)); *Duffy Crane*, 2017 WL 4919221, at *5; *Ehekircher*, 2024 WL 4201891, at *11 & n.6. Thus, while *Jenkins* provides guidance about how to reconcile a *statutory* conflict *if* one exists, its application to the question before this Court remains unclear.[5]

The Court recognizes the tension between the competing principles of the choice-of-law provision, Restatement § 187, and Colorado's well-settled preference for enforcing contracts as written versus the borrowing statute and Restatement § 6. The Court could locate no Colorado cases discussing this tension or navigating through these interwoven competing legal issues. At bottom, however, the Court finds that it must interpret the Parties' choice-of-law provision to give effect to the Parties' intent. *Ad Two*, 9 P.3d at 376; *Mountain States Adjustment*, 412 P.3d at 822. And in so doing, the Court finds that

---

[5] Although the Court ultimately need not delve into this issue, the Court notes that even if Florida law provided the statute of limitations in this case, it is unclear whether Florida's two- or four-year statute of limitations would apply to Plaintiff's claims. The Court finds that Plaintiff has identified genuine disputes of fact that preclude the Court from definitively ruling whether, if Florida law supplies the applicable statute of limitations, Plaintiff's claims are "founded on the . . . planning . . . of an improvement to real property," Fla. Stat. Ann. § 95.11(3)(b), as Plaintiff contends, or whether they are subject to the two-year limitations period for claims of "professional malpractice," Fla. Stat. Ann. § 95.11(5)(b), as Defendant argues. *See* [Doc. 94 at 14–16; Doc. 94-2 at ¶¶ 13–14, 16–17].

the intent of the Parties, based on the Agreement's ordinary meaning, was for Delaware's statute of limitations to apply.

The Court's analysis is strongly guided by Colorado's public policy of enforcing parties' contractual agreements as written. Courts "have repeatedly recognized the sanctity of contracts and the court's role in enforcing them." *Fox v. I-10, Ltd.*, 957 P.2d 1018, 1021–22 (Colo. 1998). Courts must interpret contracts as written and cannot rewrite them or ignore certain provisions. *Gagne v. Gagne*, 338 P.3d 1152, 1163 (Colo. App. 2014); *Johnson Nathan Strohe, P.C. v. MEP Eng'g, Inc.*, 501 P.3d 826, 830 (Colo. App. 2021) (all provisions must be given effect). The choice-of-law provision states that Delaware law will apply "without regard to any conflict of laws principles." [Doc. 91-7 at 2 § 14.8 (emphasis omitted)]. This language is "properly . . . read to refer . . . to [the conflict-of-law principles] of the forum in which suit is brought." *Lehman Bros. Holdings v. Universal Am. Mortg. Co.*, 12 F. Supp. 3d 1355, 1360 n.10 (D. Colo. 2014) (first citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); then citing *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996)), *aff'd*, 660 F. App'x 554. This language suggests that the Parties did *not* intend for the Colorado borrowing statute to supersede the Parties' selection of law. And Defendant has not cited any authority interpreting similar provisions in other ways or ruling that parties cannot contract around a borrowing statute. Rather, "[p]arties to a contract may agree on whatever terms they see fit so long as those terms do not violate statutory prohibitions or public policy." *S. Conejos Sch. Dist. RE-10 v. Wold Architects Inc.*, 541 P.3d 17, 21 (Colo. App. 2023). The borrowing statute has no such statutory prohibition. *See* Colo. Rev. Stat. § 13-80-110; *see also S. Conejos Sch. Dist.*, 541 P.3d at 21–22 (finding that parties could contract

around—and extend—statute of limitations because the statute "does not expressly prohibit parties from contracting around, or waiving, its protections"); *Lewis v. Taylor*, 375 P.3d 1205, 1210–12 (Colo. 2016) (finding that time limitations in the Colorado Uniform Fraudulent Transfer Act could be extended by voluntary agreement because there was no indication in the statute of the legislature's intent to prohibit voluntary tolling). The Court thus sees no reason why the Parties could not agree to apply Delaware law, including Delaware's statute of limitations, notwithstanding any Colorado conflict-of-law rules that might impede this outcome.

In light of the plain language of the Parties' agreement, the strong policy in favor of enforcing agreements, and the lack of on-point authority directing otherwise, the Court finds that the Delaware choice-of-law provision is enforceable and operates to supply Delaware's statute of limitations for Plaintiff's claims. And the law chosen by the Parties "will be applied" unless (1) the chosen state has no substantial relationship to the Parties or the transaction; (2) there is no other reasonable basis for the Parties' choice; or (3) applying Delaware law would be contrary "to the fundamental policy of the state whose law would otherwise govern." *Target Corp.*, 351 P.3d at 497; Restatement § 187(2). Defendant does not argue that any of these circumstances are present here. *See* [Doc. 91]. The Court thus holds as a matter of law that Plaintiff's claims are timely under Delaware's three-year statute of limitations. *See* Del. Code Ann. tit. 10, § 8106.

Accordingly, the Motion for Summary Judgment is respectfully **DENIED**.

**CONCLUSION**

For the reasons set forth herein, **IT IS ORDERED** that:

(1)   Defendant's Renewed Motion for Summary Judgment [Doc. 91] is **DENIED**; and

(2)   A Telephonic Status Conference is **SET** for **January 14, 2026 at 1:30 PM** to discuss the next steps in this case. Counsel for the Parties shall participate using the following dial-in information: **571-353-2301; Access Code: 783456374**.

DATED:  December 18, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge